**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| JOSEPH A.[1] <br><br> *Plaintiff,* <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br> *Defendant.* | Case No. 1:24-cv-12449 <br><br> Hon. Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph A.[1] brings this action under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB). *See* Dkt. 1. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). *See* Dkt. 7. For the reasons stated below, Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Dkt. 12) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 15) is DENIED. The Commissioner's decision is reversed, and the case is remanded to the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

**BACKGROUND**

Joseph A. applied for DIB on February 22, 2021, alleging that he became disabled on December 5, 2019, following a workplace accident. *See* Certified Admin. Record (R.) 84 (Dkt. 11-1). The Social Security Administration denied Joseph's claim initially on September 30, 2021, and upon reconsideration on August 26, 2022. R. 106–10, 121–30. At Joseph's request, an

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

Administrative Law Judge (ALJ) conducted a hearing on March 8, 2023. *See* R. 68–83. Joseph began experiencing a migraine during the hearing, so the ALJ postponed the hearing. *See* R. 77–83. The ALJ conducted a second hearing on July 26, 2023. *See* R. 37–67. The ALJ denied Joseph's claim in a written opinion dated September 21, 2023. *See* R. 17–30. The Appeals Council denied Joseph's request for review, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* R. 1–7; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ applied the five-step analytical process required by 20 C.F.R. § 404.1520. At Step 1, the ALJ concluded that Joseph had not engaged in substantial gainful activity since December 5, 2019. R. 14. At Step 2, the ALJ concluded that Joseph had the severe impairments of myofascial pain, degenerative disc disease, adjustment disorder, and personality disorder, and the non-severe impairments of sleep apnea, post-concussive syndrome, left shoulder labral tear, allergies, depression, and anxiety. R. 14–15. At Step 3, the ALJ determined that Joseph's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's Listings of Impairments. *See* R. 15–16. Before Step 4, the ALJ assessed that Joseph had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [H]e can lift/carry twenty pounds occasionally and ten pounds frequently. He can sit for six hours and can stand/walk for six hours in an eight-hour workday. He can occasionally reach overhead with the left upper extremity. He can frequently climb stairs, stoop, balance, kneel, crouch, and crawl. He can perform simple, routine tasks. He can have occasional interaction with the public.

R. 17; *see* R. 17–25. At Steps 4 and 5, the ALJ concluded that Joseph could not perform his past work as a construction laborer, but that he was capable of performing the functions of housekeeper, of which there were 200,000 jobs in the national economy; small parts assembler, of which there

were 25,000 jobs; and sorter, of which there were 115,000 jobs. R. 25–26. Based on these findings, the ALJ concluded that Joseph was not disabled during the relevant period. R. 30.

## STANDARD OF REVIEW

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## DISCUSSION

Joseph argues that the ALJ failed to account for his post-concussion syndrome and sleep apnea in assessing his physical RFC; failed to comply with Social Security Ruling (SSR) 96-8p in assessing his mental RFC; failed to comply with 20 C.F.R. § 404.1520c in evaluating the opinion of the physical therapist who conducted his functional capacity evaluation; and failed to sufficiently address his subjective complaints of pain. Dkt. 12 at 2–15. The Court agrees with Joseph's

second argument and will remand on that basis. This opinion accordingly does not address Joseph's other arguments.

"RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities." *Id.* An "RFC assessment must be based on *all* of the relevant evidence in the case record." *Id.* at *5. The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

Joseph argues that the ALJ erred by not fully addressing the opinions of two state agency psychological consultants, Dr. Howard Tin, Psy.D., and Dr. Robert Jackson, Ph.D. *See* Dkt. 12 at 5–6. In the checkbox section of the Mental Residual Functional Capacity (MRFC) assessment forms, Dr. Tin and D. Jackson both opined that Joseph was moderately limited in his abilities to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 93, 103. In the narrative section of the MRFC assessment forms, Dr. Tin and Dr. Jackson expanded briefly on some of those checkbox opinions. *See* R. 93–94, 103–04. As to Joseph's limitations in sustained concentration and persistence, they stated that Joseph

4

"has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however [he] is capable of performing simple tasks." R. 93, 103. As to Joseph's limitations in social interaction, they stated that Joseph "has difficulty in interacting appropriately with the general public and tend to withdraw and self-isolate, so limit work tasks that do not require interaction with the general public [*sic*]." R. 94, 104. However, they did not say anything about their checkbox opinions that Joseph is moderately limited in his abilities to work in coordination with or in proximity to others without being distracted by them or get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *See* R. 93–94, 103–04. The ALJ viewed Dr. Tin's and Dr. Jackson's opinions as "generally, but not fully, persuasive," and relied on the narrative portions of the MRFC assessment forms to conclude that Joseph "can have occasional interaction with the public," R. 24, a limitation that the ALJ ultimately incorporated into the RFC, *see* R. 17. But the ALJ also did not otherwise address Dr. Tin's and Dr. Jackson's checkbox opinions that Joseph is moderately limited in his abilities to work in coordination with or in proximity to others without being distracted by them or get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *See* R. 24.

The ALJ's failure to address these checkbox opinions was a reversible error. As the Seventh Circuit has held, when formulating the RFC, an ALJ "must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014)). "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). In practice, this means that the ALJ must "evaluate all of the limitations (or at least explain

5

why he was excluding some of the limitations) put forth in the consultants' opinions." *Adela G. v. Kijakazi*, No. 21-cv-00209, 2024 WL 168101, at \*4 (N.D. Ill. Jan. 16, 2024); *Monique J. v. Kijakazi*, No. 22-cv-04573, 2023 WL 7110746, at \*3 (N.D. Ill. Oct. 27, 2023) (remanding because "the ALJ did not explain, nor is it self-evident, how the mental RFC accommodates" the state agency psychologist's checkbox findings "or why [the ALJ] did not include them in the mental RFC"); *Sarah O. v. O'Malley*, No. 23-cv-50045, 2024 WL 1254536, at \*4 (N.D. Ill. Mar. 25, 2024) (remanding because "'even if an ALJ may rely on a narrative explanation, the ALJ must still adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of the forms,'" and "it is not clear to this Court that the narrative RFC 'adequately encapsulates and translates' the checkbox limitations relating to supervisors") (quoting *Decamp*, 916 F.3d at 676, and *Varga*, 794 F.3d at 816).

The ALJ did not do that here with regard to Dr. Tin's and Dr. Jackson's opinions about Joseph's moderate limitations in his abilities to work with others and get along with coworkers or peers. *See* R. 17–25. The ALJ did not address those checkbox opinions at all. This matters because someone who is limited in their ability to work with coworkers or peers may not be able to perform the job functions that the ALJ ultimately identified at Step 5. *See, e.g.*, *Leesa S. v. Kijakazi*, No. 20-cv-01874, 2023 WL 2186010, at \*5 (N.D. Ill. Feb. 23, 2023) ("The ALJ's failure to account for the agency psychologists' opinion that plaintiff required a work setting with reduced social demands because of her moderately limited ability to get along with coworkers without disrupting them or exhibiting extreme behavior was an error that requires remand."); *see also Heinrich v. Astrue*, No. 12-cv-04352, 2013 WL 4506876, at \*5 (N.D. Ill. Aug. 23, 2013) ("[T]he burden shifts to the ALJ in step five to prove that the complainant is capable of other work, based upon her age, RFC, and work experience, within the economy.") (citing 20 C.F.R. § 404.1520(a)(4)(v)).

6

In response, the Commissioner argues that under the Social Security Administration's internal policy, "it is Section III [the narrative section] of the MRFC[] [assessment form] where a narrative describing a claimant's abilities is recorded, and the [Seventh] Circuit has made clear 'that adjudicators are to use as the assessment of RFC.'" Dkt. 15 at 8 (quoting *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015), in turn quoting the Social Security Administration's Program Operations Manual System (POMS) DI 25020.010(B)(1)). But the Seventh Circuit also stated in *Capman* (and the other similar cases cited by the Commissioner) that an ALJ's reliance on the narrative section is reasonable if "it is not inconsistent with the findings in the Section I worksheet," and that "an ALJ should not ignore limitations recorded in Section I [the checkbox section]." *Id.* at 579; *see also Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) (approving an ALJ's reliance on the state agency physicians' narrative opinions "because the state physicians' checklists in fact are consistent with their narratives"); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (approving an ALJ's reliance on a state agency psychologist's narrative opinion because it "went further and translated" the checkbox opinion in the same form); *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (same). Here, Dr. Tin's and Dr. Jackson's narratives did not address at all their checkbox opinions that Joseph is moderately limited in his abilities to work with peers and coworkers. *See* R. 93–94, 103–04. Thus, the ALJ's reliance on those narratives does not demonstrate that the ALJ considered the checkbox findings.

The Commissioner also cites decisions (at Dkt. 15 at 9–10) in which the Seventh Circuit approved an ALJ's reasoned choice between conflicting checkbox findings and narrative assessments. *See Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018) (approving an ALJ's decision to "ignore the finding . . . that [the claimant] was moderately limited in concentration persistence and pace" because the ALJ "relied instead on the psychologist's explanation in the

7

narrative assessment [of Section III] in the same report that [the claimant] had the concentration and pace 'necessary to fulfill a normal workday'"); *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020) ("The ALJ's reasoning and decision here favoring Dr. Winkler's descriptive evaluation over the 'checkbox' approach of Apke's treating physicians was within the ALJ's discretion and appropriate.") (internal citations omitted); *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019) (approving an ALJ's reliance on narrative opinions in the MRFC assessment forms because "the agency doctors' narrative conclusions . . . translate their residual-functional-capacity recommendations and are consistent with Dr. Rozenfeld's testimony, to which the ALJ gave great weight"). But again, those cases do not apply here because the ALJ did not address the aforementioned checkbox findings at all. Nor did the ALJ (have to) make a reasoned choice between conflicting checkbox findings and narrative assessments, as Dr. Tin and Dr. Jackson did not expand on the specific checkbox findings in the narrative assessment portion of the form.

On remand, the Court does not require the ALJ to add RFC limitations that account for all of Dr. Tin's and Dr. Jackson's opinions. But the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham*, 765 F.3d at 695; *see Sarah O.*, 2024 WL 1254536, at *5 ("'While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, the ALJ must still affirmatively *evaluate* the effect such limitations have on the claimant's RFC.'" (quoting *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017)) (cleaned up)).

## CONCLUSION

Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Dkt. 12) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 15) is DENIED.

The Commissioner's decision is reversed, and the case is remanded to the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

SO ORDERED.

DATED: March 25, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

9